[960 NE2d 414, 936 NYS2d 645]

Mikhail Tkeshelashvili et al., Appellants, v State of New York, Respondent.

Argued October 19, 2011; decided November 22, 2011

**POINTS OF COUNSEL**

*Weingrad & Weingrad LLP*, New York City (*G. Michael Simmon* and *Penny Shemtob* of counsel), for appellants. I. Where Mr. Mikhail Tkeshelashvili had no warning, made no observation, was not aware, and did not have knowledge that the water level in Colgate Lake was lowered, he cannot be held reckless and thus the sole proximate cause of his injuries. (*Boltax v Joy Day Camp*, 67 NY2d 617; *Howard v Poseidon Pools*, 72 NY2d 972; *Kriz v Schum*, 75 NY2d 25; *Ziecker v Town of Orchard Park*, 75 NY2d 761; *Olsen v Town of Richfield*, 81 NY2d 1024; *Butler v Seitelman*, 90 NY2d 987; *Walter v Niagara Mohawk Power Corp.*, 193 AD2d 1065.) II. Where the Court of Claims found the State had a duty to maintain and to warn and where an abundance of nonrefuted evidence demonstrated the State acted unreasonably in failing to warn of a known danger and foreseeable risk of injury to appellant, summary judgment against the State is warranted. (*Basso v Miller*, 40 NY2d 233; *Preston v State of New York*, 59 NY2d 997.)

*Eric T. Schneiderman, Attorney General*, Albany (*Robert M. Goldfarb, Barbara D. Underwood, Andrew D. Bing* and *Peter H. Schiff* of counsel), for respondent. Claimant's reckless dive into water he knew was always shallow, fluctuated and was at a low level that day was the superseding and sole proximate cause of the accident. (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308; *Howard v Poseidon Pools*, 72 NY2d 972; *Kriz v Schum*, 75 NY2d 25; *Boltax v Joy Day Camp*, 67 NY2d 617; *Olsen v Town of*

*Richfield*, 81 NY2d 1024; *Lionarons v General Elec. Co.*, 215 AD2d 851, 86 NY2d 832; *Mortis v Dittl*, 275 AD2d 940; *Butler v Marshall*, 243 AD2d 971; *Preston v State of New York*, 59 NY2d 997; *Johnson v Harrington*, 215 AD2d 857, 87 NY2d 802.)

## OPINION OF THE COURT

READ, J.

On a sunny late summer's afternoon—the Sunday of Labor Day weekend in 2005—claimant Mikhail Tkeshelashvili and two male friends went on an outing to Colgate Lake, located in the Town of Jewett[1] in Greene County. Colgate Lake formed following construction in 1887 of Colgate Lake Dam, a log crib and stone masonry structure, to supply water power for a saw mill at a time when logging was a major industry in the area.[2] The length of the 15-foot-high dam was 275 feet, with two spillways. These spillways were roughly three feet below the dam's crest, and the top of the spillways was, in turn, no more than four feet above the lake bed, which was level for several feet in front of the spillway's face before gradually dropping away to the deepest part of the lake.

Colgate Lake is a quite shallow 26-acre body of water, with a mean depth of 4.6 feet and a maximum depth of 10 feet. It is fed only by the natural water runoff from the surrounding watershed. As a result, the lake's water level fluctuates seasonally depending on snowmelt and rainfall amounts: in times of relative drought, and especially during summer months, the lake recedes, but when runoff is abundant, as in the spring, water flows over the dam's spillway. And because of its age and method of construction, the dam leaked, prompting citizen complaints and periodic repairs to the dam's impoundment or lake face: lower water levels made the lake less desirable for recreation and less aesthetically appealing, as the water would take on a brownish cast.

Colgate Lake and its environs, acquired by the State of New York in 1975, is situated in a portion of the Catskill Park Forest

---

1. The Town of Jewett, formed in 1849, was named after Freeborn G. Jewett, the first Chief Judge of the New York Court of Appeals.

2. As part of a dam reconstruction in 2007 and 2008, the 1887 dam was excavated and a new dam was constructed slightly downstream on East Kill Creek.

Preserve designated as "wild forest."[3] Among the four classifications of state land in the Preserve, "wild forest" is the second most pristine. As required by article XIV of the New York Constitution, these lands are open to the public, but infrastructure and amenities are minimal so as to "protect the natural wild forest setting and to provide those types of outdoor recreation that the public can enjoy without impairing the wild forest atmosphere or changing the character of fragile areas within wild forest boundaries." Thus, other than parking lots and a connecting foot trail, Colgate Lake was undeveloped and unsupervised in 2005: there was no beach (only a grassy, open field on the edge of the lake nearest the parking lot), no designated swimming area, no lifeguards or other staff, no flush toilets (there was one privy) and no showers.

Claimant and his family made more than 20 day trips to Colgate Lake during 2005 and the preceding five years. Indeed, he could not recall exactly how many times he had visited the lake "because [there were] a lot of times." On September 4, 2005, claimant entered the water by diving from the dam's eastern spillway in the same manner as in his many past visits. He climbed onto the dam, removed his shirt and flip flops, jumped onto the spillway and "did not stop at all" before plunging into the water headfirst, with his arms outstretched over his head, attempting to dive flat and skim the water roughly parallel to the bottom of the lake. This time, though, he struck his head on the lake bed, suffering a spinal cord injury that rendered him quadriplegic. Claimant was 43 years old, five feet, eight inches tall and weighed 170 pounds.

Claimant acknowledged that on past visits to Colgate Lake he had observed the water flowing over the spillway, while at other times the water was below the spillway's top. He testified at his deposition that he knew the water was below the spillway on September 4, 2005, but had "no clue" how deep the water was because it was too murky for him to see the bottom. Photographs taken by an investigator from the New York State Department of Environmental Conservation (DEC) three days after claimant's accident show the water level to be perhaps two feet below the top of the eastern spillway, which means that the water was about two feet deep at the spillway's face on the impoundment or lake side. These photographs were taken the

---

**3.** About 60% of the 287,514-acre Catskill Park Forest Preserve, or 155,000 acres, is designated wild forest land.

same time of day as claimant's accident occurred, and under similar sunny weather conditions. This shallowness is confirmed by the deposition testimony of one of claimant's friends, who dove in after him and hit his hands on the lake's stone bottom, bruising his palms. When he stood up, the "water was a little over [his] knees," but much deeper after "one or two steps."

Lois Keegan, who witnessed claimant's ill-fated dive, described what happened:

> "I saw people, three gentlemen in their thirties, being loud, and laughing, approaching the spillway . . . [then] one man who I later learned was [claimant], remove[d] his shirt and enter[ed] the water. This man didn't hesitate, he walked right to the edge of the spillway, pulled his shirt off, and dove headfirst into the water. I thought this was unusual, because the water is shallow. After diving, the man surfaced, but I noticed he didn't lift his head."

Ms. Keegan sensed something was amiss, so she "asked the other two men if their friend was ok, but they disregarded my questions, finally the skinny man said, 'He's just playing!' I knew something was wrong."

Ms. Keegan's boyfriend, Jay Ward, a certified National Ski Patrolman trained in outdoor emergency care, jumped into the water at her urging and swam out to claimant, who had floated into deeper water. Mr. Ward turned claimant over in the water, stabilized his neck and back and brought him to shore to await rescue personnel. The emergency crew arrived quickly, and claimant, who had little or no sensation in his extremities, was airlifted by helicopter to Albany Medical Center.

Claimant and his wife, suing derivatively (collectively, claimants), filed this claim for damages, alleging that the State negligently failed to maintain Colgate Lake and Colgate Lake Dam in a reasonably safe condition. Claimants theorized that the State was liable because the water level at Colgate Lake was prone to drop due to leaks in the dam, and "the State took no steps to warn visitors who swam and dived into Colgate Lake about the danger of lowered water levels caused by the leak."

In May 2008, claimants moved for summary judgment on the issue of liability, and the State moved for summary judgment dismissing the claim. The Court of Claims, by order entered October 6, 2008, ruled in the State's favor. Citing our decision

in *Olsen v Town of Richfield* (81 NY2d 1024 [1993]), the judge concluded that "based upon [claimant's] substantial prior experience, [he] knew or should have known both that Colgate Lake was shallow and that the actual depth of the lake fluctuated"; therefore, his dive "constitute[d], as a matter of law, an intervening act which was so extraordinary or far removed from the [State's] conduct as to be unforeseeable" (21 Misc 3d 1113[A], 2008 NY Slip Op 52063[U], *9 [Ct Cl 2008] [internal quotation marks omitted]).

The judge further considered claimant's deposition testimony that he had "no clue" about the water's depth at the spillway as further support for dismissing the claim. Citing *Lionarons v General Elec. Co.* (215 AD2d 851 [3d Dept 1995], *affd* 86 NY2d 832 [1995]), he observed that

> "[d]espite his long experience swimming at Colgate Lake and diving from the spillway, notwithstanding his awareness that water levels at the lake fluctuated and in spite of his observation that water was not flowing through the spillway immediately prior to diving, the claimant failed to determine the level of the lake before entering the water. Furthermore, claimant stated in his affidavit that because the water was 'dark' he was unable to see the lake bottom prior to diving. A headfirst dive into 'dark' water without first determining its depth is clearly reckless conduct in circumstances, such as those present here, where the claimant was aware that the water level of the lake fluctuated. This is particularly true where the claimant, through long experience at the accident site, knew that the water was shallow. The fact that the claimant and others had successfully completed dives from the spillway of the dam on prior occasions does not render claimant's conduct any less reckless or more foreseeable" (*id.* [citations omitted]).

Finally, the judge noted that although there was proof that leaks in the dam "were a continuing and long-standing problem," there was no proof, "expert or otherwise, that the rate at which the water leaked from the dam was any greater in September 2005 than it was on the many occasions [claimant] was at Colgate Lake during the preceding five year period" (*id.*) Put another way, claimants

"failed to establish that the shallow depth of the water was a condition different in kind than those with which the claimant was familiar . . . [T]he fact that the dam leaked for over 30 years and was leaking in September 2005 does nothing to negate the claimant's familiarity with the fluctuating water level of the lake and the dangers associated with diving into shallow water" (*id.*).

Claimants appealed, and the Appellate Division affirmed. That court "agree[d] with the Court of Claims that the sole legal cause of claimant's injuries was his own reckless conduct in diving into the water, which he knew or should have known was too shallow for diving" (71 AD3d 1318, 1318-1319 [3d Dept 2010]), and noted that "claimants' own evidence established that, even under the best circumstances, the water in the area where claimant dove is never more than four feet deep" (*id.* at 1319). We granted claimants' motion for leave to appeal (15 NY3d 711 [2010]), and now affirm.

As previously noted, claimants' theory of liability is that the State was "negligent as a matter of law for failing to warn of a known danger and in failing to take any steps to warn of the hazards posed by this danger." The "known danger" identified by claimants was that the lake's water near the dam was too shallow for diving because the dam leaked. Claimant contends that he did not possess the requisite "specific and actual awareness of shallow water" necessary to warrant dismissal because he had previously dived into the lake from the spillway without incident and had "no knowledge that the water level [had] been altered."

Claimant, however, acknowledged that he was a frequent visitor to Colgate Lake to swim there, and that he routinely entered the lake on his numerous visits by executing a flat dive from the eastern spillway. It is undisputed that the lake has a mean depth of only 4.6 feet and would have been at most four feet deep at the lakeside face of the spillway when the lake was brimming with water, which claimant observed was decidedly not the case on September 4, 2005. He knew that the lake's water level fluctuated; he saw that the water was below the top of the spillway on September 4, 2005 and, as previously indicated, nearly contemporaneous photographs show what was there to be seen: a roughly two-foot differential between the water's surface and the top of the spillway. Any warning would have only alerted him to what he already knew about the approximate water level in the vicinity of the spillway as a result of his

familiarity with the depth of the lake's water and the height of the spillway above the lake bed. And as the Court of Claims pointed out, there is no evidence, expert or otherwise, to support claimants' speculation that the dam was leakier in 2005 or the lake's water level was lower on September 4, 2005 than had been the case on other occasions when claimant dove into the lake.

Further, it does not follow, as claimants assume, that the lake's water level *must* have been lower than usual on September 4, 2005 because claimant did not hit bottom any of the other times he dove into the lake from the spillway or, if the water level was lower that day, that this was because of leaks in the dam, as claimants contend, rather than the amount of rainfall in the summer of 2005. The fact is, claimant engaged in reckless behavior when, on the date of the accident, he dove from the spillway into the dangerously shallow waters of Colgate Lake.

Relatedly, even assuming that the State owed claimant a duty to warn, we have consistently held that a plaintiff with actual knowledge that he is diving into shallow water has engaged in reckless conduct constituting the sole legal cause of any ensuing injuries, thus absolving a defendant of negligence. In *Olsen*, for example, an 18-year-old boy dove into a shallow creek from a bridge owned by the defendant County. The evidence established that the boy was familiar with the creek and was aware that its water level fluctuated; further he understood that diving from the bridge required him to execute a shallow dive, which he failed to safely accomplish on the day he injured himself. We held that "on this record," which is essentially indistinguishable from the record in this case, "the sole legal cause of plaintiff's injuries was his own reckless conduct in attempting that dive" (*Olsen*, 81 NY2d at 1026; *see also Lionarons*, 215 AD2d at 853 ["plaintiff's own reckless dive headfirst into an area of water (in a creek) which he could only assume was of sufficient depth . . . constituted an unforeseeable superseding event relieving defendants of liability"]; *Howard v Poseidon Pools*, 72 NY2d 972 [1988] [the reckless conduct of a plaintiff who dove headfirst into a pool at a location where the water was at most chest-deep was an unforeseeable superseding event that absolved defendants of liability]; *Boltax v Joy Day Camp*, 113 AD2d 859 [2d Dept 1985], *affd* 67 NY2d 617 [1986] [same]).

Claimants would distinguish *Olsen*, *Boltax* and *Howard* on the basis that in those cases, the plaintiffs possessed "actual

and specific knowledge" of the depth of the water into which they dove and proceeded despite the incredible and evident risk whereas here, claimant's knowledge of the risk was only imputed. But what the plaintiff actually knew about the depth of the water in *Olsen* was that "there was only a narrow-target of deep water entry that he had to hit precisely on the dive" (81 NY2d at 1026); the plaintiff in *Boltax* "admitted his familiarity with the various water levels at each part of the pool, yet chose to dive head first . . . into shallow water" (67 NY2d at 620); the plaintiff in *Howard,* who dove into an above-ground pool having a water depth of about four feet, "testified that he had been informed of the water depth and . . . when he stood in the pool, the water level was about 'chest high' " (72 NY2d at 974). It is difficult to grasp any meaningful difference between what these plaintiffs "actually" knew about the depth of water in the creek (*Olsen*) or the pools (*Boltax* and *Howard*) into which they dove and claimant's knowledge about conditions at Colgate Lake. Here, as in these other cases, what claimant knew about those conditions should have alerted him that the water at the face of the dam on the lake side was not deep enough to support safe diving, yet he dove there anyway.[4]

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

Order affirmed, with costs.

---

4. We note that the State argued alternatively in the Court of Claims and the Appellate Division that this claim should be dismissed on the basis of the assumption of risk doctrine. The lower courts did not reach this issue in light of their conclusion that claimant's own reckless conduct was the sole legal cause of his injuries. On this appeal, the State mentions, but does not pursue, its argument about assumption of risk, and we therefore have no occasion to address it.